C & S FUEL, INCORPORATED,
Plaintiff,

v.

CLARK EQUIPMENT COMPANY,
Defendant.

Civ. A. No. 79–40.

United States District Court,
E. D. Kentucky,
London Division.

Sept. 17, 1981.

Richard L. Norris, John M. Choplin, II, Norris, Choplin & Johnson, Indianapolis, Ind., Robert Milby, London, Ky., for plaintiff.

Edgar A. Zingham, K. Gregory Haynes, Wyatt, Tarrant & Combs, Louisville, Ky., for defendant.

## MEMORANDUM

SILER, District Judge.

This matter is before the Court on the defendant's motion for summary judgment. As is evident by the average length of the supporting memoranda, the parties have availed themselves of the opportunity to brief the pertinent issues. In addition, the parties argued this matter at the pre-trial conference on July 15, 1981. After a review of the record and the pleadings of counsel, the Court concludes that the defendant's motion for summary judgment should be denied, and that this matter should proceed to trial on November 16, 1981. An appropriate Order will be entered this date.

This lawsuit concerns a 1975 Michigan 475 B tractor shovel, manufactured by the defendant, Clark Equipment Co., and purchased on July 22, 1975. The tractor was owned or used by four or five machine and mining enterprises prior to its purchase by the plaintiff, C & S Fuels, Inc., on November 16, 1976. On March 16, 1977, around 8:00 P.M., the tractor was destroyed by fire, as it was being used to remove overburden from coal seams at a mine site near Cinda, Kentucky, on Racoon Creek, in Leslie County.

At the time the fire occurred, the operator was in the process of loading the front bucket with overburden. Except for having been frightened, the operator was unhurt. In this action, the plaintiff seeks solely to recover for the loss of the tractor.

For reasons not readily apparent in the record, the remaining hull of the tractor

was subsequently dismantled. The bucket of the shovel tractor turned up in Campton, Kentucky; the engine went to the Cummins Diesel shop in Hazard; and the main body remained at the mine site in Cinda. Later, in October, 1980, after the plaintiff filed its complaint, demanding compensatory damages on theories of negligence and strict liability, a representative of the defendant and counsel for the plaintiff went to Cinda to view the remaining hull. For reasons again not readily apparent in the record, by October, 1980, none of the essential portions of the damaged machine could be located.

Forty-seven tractors of this model have caught fire since 1967. The defendant in this case is also a defendant in at least six other matters involving this model tractor for personal and property damages resulting from fire. The plaintiff alleges that a basic flaw in the original Clark design has sparked each of these fires.

The plaintiff alleges that the Clark design permitted leaking hydraulic fluid to be sucked past a diffuser shield, installed to reduce the amount of engine noise and to prohibit such hydraulic fluid, and into the engine. The flammable hydraulic fluid would be drawn across the exhaust manifold and turbocharger jackets. The operating temperatures, between 840 °F and 990 °F, of the model's engine exhaust manifold and turbochargers, were far in excess of the flash point of the hydraulic fluid, 370 °F. The leaking hydraulic fluid would thereafter ignite. As leaking hydraulic fluid continued to be drawn into the engine, the fire would grow and spread to fuel lines, tires, grease, and other combustible material in the fire's path. Because of the abruptness and ferocity with which this tractor was enveloped in flames, the plaintiff contends that it has made a *prima facie* showing of the cause of the property loss, despite its failure to produce the machine for inspection and testing.

In its memorandum in support of its motion for summary judgment, the defendant offers four arguments in support of its position. The defendant first contends that the plaintiff may not recover in tort, under either negligence or strict liability theories, solely for damages arising from the loss of an allegedly defective product. Next, the defendant contends that because the plaintiff may not demonstrate that the tractor reached C & S Fuels without substantial change in the condition in which it was sold, since the plaintiff cannot produce the tractor, the defendant is not liable under tort strict liability theory. Third, the defendant argues that the plaintiff has failed to make a sufficient showing of the defendant's breach of its standard of care in designing and manufacturing the tractor to survive a motion for summary judgment on the negligence claim. Finally, the defendant argues that because the plaintiff's conjecture of the cause of the loss is so speculative, the Court must dismiss both the negligence and the strict liability claims. The defendant's arguments are addressed seriatim.

The primary issue raised in the defendant's motion is whether Kentucky law recognizes recovery on a theory of strict liability under § 402A of the Second Restatement of Torts solely for damages to the product alleged to be defective. While no Kentucky court has squarely decided this issue, the Court concludes that Kentucky would permit recovery for a defective product in tort, and would permit the tort recovery to augment contractual remedies available to the buyer and seller. In *C. D. Herme, Inc. v. R. C. Tway Co.*, 294 S.W.2d 534 (Ky.1956), the Kentucky Court of Appeals permitted the recovery of property damages for negligence from the manufacturer of a defective product. In *Herme*, the plaintiff purchased a semi-tractor which was manufactured by the defendant. A defective king-pin had been installed in the trailer which caused the trailer to upset in a ditch. The plaintiff sued for damages to the semi-trailer and for the loss of its use, alleging that the manufacturer had negligently installed the king-pin. In permitting the recovery, the court concluded that the mere fact that the actual injury occurred only to property cannot relieve the negligent manufacturer of liability. *Id.* at 537.

In *Hardly Able Coal Co. v. International Harvester Co.*, 494 F.Supp. 249, 251 (N.D.Ill. 1980), the holding in *Herme* was cited as authority in Kentucky permitting recovery in tort solely for property damage to a defective product. There, the plaintiff sued the manufacturer of a bulldozer for damages for a destroyed bulldozer. The plaintiff contended that its loss resulted from the defendant's failure to prevent hydraulic fluid from coming in contact with bulldozer's engine. Because conflicts of law principles directed the Illinois court to apply Kentucky law, the court examined Kentucky case law to determine whether the plaintiff had stated a cause of action. The Illinois district court concluded that Kentucky would permit the recovery.

This past spring, the identical issue raised in the defendant's motion for summary judgment was decided adversely to the defendant in the Western District of Kentucky in *Rudd Construction Equipment Co. v. Clark Equipment Co.*, Civil No. C79–0314L(A) (W.D.Ky., filed July 16, 1979). There, the plaintiff brought a three-count complaint against Clark Equipment Co., the defendant in this action, for the loss of a defective 475 B tractor shovel, allegedly destroyed in a fire caused by a leak in the hydraulic system. Chief Judge Allen of the Western District of Kentucky, initially, on March 3, 1981, granted summary judgment to the defendant on the products liability claim. Judge Allen noted that § 402A had been developed to provide remedies for tortious conduct falling into the interstices created by strict application of privity in contract law. Because Judge Allen deemed the remedies in contract ensured an adequate recovery on the facts of the case, he refused to recognize that Kentucky would permit the plaintiff's recovery in tort.

Following both parties' motions for reconsideration, on May 8, 1981, Judge Allen reversed himself, and granted summary judgment on the plaintiff's products liability claim. Judge Allen wrote:

> This Court's original judgment treated plaintiff's section 402A claim on the specific facts of this case as displaced by the particular provisions of [Kentucky's Uniform Commercial Code]. After careful reexamination of the Official Comments to U.C.C. 1–103 [KRS § 355.1–103], and the Committee Comments to [the Second] Restatement of Torts, § 402A, we believe that this treatment is in error. While Section 402A was designed specifically for the situation in which privity of contract was lacking, it does require proof of an additional element, that the defect was unreasonably dangerous, not required under a Uniform Commercial Code warranty claim.

*Rudd Construction Equipment, supra,* memo. op. at 3 (May 5, 1981).

■ This Court concludes with Judge Allen that because the elements of a cause of action in tort for property damage loss differ from the elements in contract, under Kentucky law, the plaintiff may recover in tort solely for property damage to the defective product itself. In joining with the Western District of Kentucky, the Court is not unmindful of the defendant's forceful policy arguments in refusing to recognize a cause of action in tort. However, at this juncture, the superseding policy of uniform application of the law compels only one result. Were this Court to grant the defendant's motion, it would result in declaring *the same defendant for the same conduct* not liable in half of this Commonwealth, and liable in the other half. Obviously, there is no justification for such a result. To end the uncertainty for the defendant, the parties should eventually certify this question to the Kentucky Supreme Court for a dispositive ruling.

■ The defendant next contends that it is entitled to summary judgment because the plaintiff has failed to make a sufficient showing that the tractor reached it without substantial change in the condition in which it was sold. In order to recover under the theory of strict products liability, the plaintiff must show that there was no substantial change in the product from the time it was originally sold to the time of the incident. *Dealers Transport Co. v. Battery Distributing Co.*, 402 S.W.2d 441, 446–47 (Ky.

1965). In its interrogatories to the defendant, the plaintiff asserts that it properly maintained and serviced the tractor and that, at the time of the accident, the tractor appeared to be in good condition. The plaintiff denies that it made any major overhauls of the tractor. The leaks in the hydraulic system apparently were a common occurrence in this model tractor. If the leakage were a result of improper maintenance, the defendant appears to admit that it had foreseen the problem and had attempted to rectify it. Hence, the plaintiff argues, the leaks were not attributable to any maintenance by the plaintiff or by the intervening owners.

In response, the defendant argues that the intervening owners and the plaintiff made substantial alterations to the tractor between the time it was manufactured and the time it was destroyed. The record indicates that the tractor shovel was regularly employed in rough, heavy work, necessitating regular upkeep. The defendant argues that it is likely that the successive owners did not furnish the tractor the proper care to prevent the resulting explosive fire. The failure to preserve the machine frustrates the possibility of ascertaining the actual condition of the tractor. Because of the failure to preserve the machine, the defendant argues that the plaintiff cannot meet its burden of proof.

In denying the motion for summary judgment, the Court does not need to decide whether the tractor was in substantially the same condition when the explosion occurred as when it was first purchased; the Court need only conclude that the plaintiff has made a sufficient showing that it was in substantially the same condition at the time of the explosion. Here, the plaintiff has made a sufficient showing, for there is a genuine issue of material fact to be resolved by the trier of fact. Fed.R.Civ.P. 56(c). While the defendant is correct in noting that a number of factors vitiate the probability that a defect existed at the time of manufacture: the number of owners, the number and the extent of successive servicings of the tractor, and the length of distance and time that the tractor was driven, the trier of fact is to weigh these circumstances and draw the inference whether a defect existed at the time of manufacture.

The defendant also contends that the plaintiff has failed to state a claim in negligence by assuming that the occurrence of an accident alone raises the inference of a lack of due care. In Kentucky, actionable negligence may not be presumed due to the mere occurrence of an accident or an injury. *Roberts v. Lowery*, 379 S.W.2d 235, 236 (Ky.1964); *Hoskins v. Hoskins*, 316 S.W.2d 368, 370 (Ky.1958). The plaintiff must demonstrate that the defendant has a duty to exercise reasonable care in designing and manufacturing the tractor and that the defendant breached that duty by its failure to exercise reasonable care. *C. D. Herme, Inc. v. R. C. Tway Co., supra* at 537. The plaintiff must demonstrate that the manufacturer failed to exercise reasonable care, not extraordinary precaution. *Jones v. Hutchinson Manufacturing, Inc.*, 502 S.W.2d 66, 69 (Ky.1973); *see also Garrison v. Rohm & Haas Co.*, 492 F.2d 346, 351 (6th Cir. 1974). Because of the inability of the plaintiff's expert witness to attribute the fire to any one alleged defect in the design or manufacture of the tractor, the defendant contends that the plaintiff has not made a sufficient showing of negligence to warrant trial.

The plaintiff responds that the evidence adduced more than adequately refutes the defendant's contention that it is entitled to summary judgment. In support of its response, the plaintiff relies on testimony that demonstrates that Clark had knowledge that leaks in the hydraulic system were a common experience. The testimony indicates that after Clark began to receive reports of this type of explosive fire, Clark conducted investigations into potential causes. After Clark received notice of approximately ten such fires, Clark appointed a task force to study the problem of fires in model 475 tractors. The defendant's task force identified the likelihood of ruptured hydraulic hoses as being the "producing cause" of the fires that had been reported

to Clark prior to 1975. The record also indicates that no steps were taken to warn the plaintiff of the danger or otherwise initiate action to protect it, even though hydraulic leaks potential causing fire were foreseeable from as early as 1966, when the 475 model was originally designed.

■ Because there is a genuinely disputed issue of fact as to the defendant's alleged breach of its duty to exercise reasonable care, the defendant is not entitled to summary judgment on the negligence issue. Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be appropriately granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." In *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted), Judge Weick stated the guidelines for applying Rule 56(c) and governing a motion for summary judgment:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

This Court will "be slow in disposing of a case of any complexity on a motion for summary judgment." *S. J. Groves & Sons Co. v. Ohio Turnpike Commission*, 315 F.2d 235, 237 (6th Cir.), *cert. denied*, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963). The Court will not deprive the plaintiff "of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one," *id.* (citations omitted); for, clearly, "issues of negligence, including such related issues as wanton or contributory negligence, are ordinarily not susceptible of summary adjudication, . . . but should be resolved by trial in the ordinary manner." 6 *Moore's Federal Practice* ¶ 56.17[42], at 946 (2d ed. 1981) (footnote omitted); *Aetna Insurance Co. v. Cooper Wells & Co.*, 234 F.2d 342, 344 (6th Cir. 1956).

It is only in the exceptional negligence case that the rule should be invoked. . . . And even where the trial judge reasonably may surmise that plaintiff is unlikely to prevail upon a trial, that is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them.

*Rogers v. Peabody Coal Co.*, 342 F.2d 749, 751 (6th Cir. 1965) (*per curiam*) (citations omitted).

■ Finally, on both the strict liability and the negligence claims, the defendant claims it is entitled summary judgment, because the plaintiff has not made a sufficient showing that any alleged defect in design or manufacture of the tractor was the cause of the plaintiff's injury. In Kentucky, products liability claims on theories of negligence or strict liability have one common denominator: the plaintiff must establish that the product was the factual and legal cause of the harm. *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky.1970).

■ Without once again narrating the arguments of counsel and the proffered evidence in the record, the defendant is not entitled to summary judgment because the controverted causation issues have not been shown to be sham, frivolous, or so unsubstantial that it would be futile to try them. *Rogers v. Peabody Coal Co., supra* at 237.

An appropriate Order has been entered this date.